(112 So. 105)

JACKSON, State Superintendent of Banks, v. CHEMICAL NAT. BANK. (3 Div. 789.)

Supreme Court of Alabama. March 24, 1927.

1. Banks and banking ⬅63½—Superintendent of banks, in charge of insolvent bank, is more than mere receiver or trustee acting under authority of court having jurisdiction of pending case (Gen. Acts 1911, pp. 50–89, as amended by Gen. Acts 1915, pp. 88–103).

Under Gen. Acts 1911, pp. 50–89, as amended by Gen. Acts 1915, pp. 88–103, creating banking department, superintendent of banks, in charge of insolvent bank, is more than mere receiver or trustee acting only by and under authority of court having jurisdiction of pending case.

2. Banks and banking ⬅63½—That, as party litigant, superintendent of banks is subject to order of court does not require court's consent as condition precedent to appeal (Gen. Acts 1911, pp. 50–89, as amended by Gen. Acts 1915, pp. 88–103).

That, as party litigant, superintendent of banks is subject to order or judgment of court having jurisdiction of fund or claim made subject of litigation, under Gen. Acts 1911, pp. 50–89, as amended by Gen. Acts 1915, pp. 88–103, creating banking department, does not require consent of that court as condition precedent to appeal, but he may appeal when he considers it necessary to due determination of claim; ownership or distribution of funds being administered by him in official capacity.

3. Banks and banking ⬅63½—It is duty of superintendent of banks to preserve funds being administered by him in official capacity and disburse same under law.

It is duty of superintendent of banks, as such official and quasi trustee, to preserve fund being administered by him in official capacity and duly disburse same under law.

4. Banks and banking ⬅179—Where right exists to apply collateral to payment of principal, it can also be applied to interest that has accrued.

Where right exists to apply proceeds of collateral to payment of principal, it may also be applied to interest that has duly accrued.

5. Guaranty ⬅2—Place of payment of guaranty was place designated in written instrument payment of which was guaranteed.

Place of payment of guaranty was designated place of acceptance and payment in instrument, payment of which was guaranteed, which was in New York, even though guarantor had written letter in Alabama that it would take care of acceptances if not paid at maturity.

6. Interest ⬅28—Interest rate on guaranty was legal rate in state where instrument evidencing debt was payable.

Rate of interest on guaranty was legal rate in state where written instrument evidencing debt was payable.

7. Evidence ⬅43(1)—Supreme Court takes judicial notice of former record.

Supreme Court takes judicial knowledge of former record.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

In the suit of the Chemical National Bank of New York against A. E. Jackson, as State Superintendent of Banks, in charge of the Merchants' Bank of Montgomery, defendant moves for a reference to the register to ascertain the amount due to complainant as a creditor of the Merchants' Bank, after allowance of proper credits. From the decree, defendant appeals. Affirmed in part, and in part reversed and remanded.

See, also, Montgomery v. Chemical Nat. Bank of New York, 209 Ala. 585, 96 So. 898, and Chemical Nat. Bank v. Jackson, 214 Ala. 458, 108 So. 53.

Steiner, Crum & Weil and Horace Stringfellow, all of Montgomery, for appellant.

The officers of the Merchants' Bank had no authority to pledge the security of the bank for payment of the Hall-Beale Company indebtedness. The resolution by the directorate will not be extended beyond its terms. Dearing v. Lightfoot, 16 Ala. 30; Thompson v. Atchley, 201 Ala. 400, 78 So. 196. It was

---

not directly held on former appeal that such resolution was broad enough to cover the transaction in judgment. Chemical Bank v. Jackson, 214 Ala. 458, 108 So. 53. Being payable in New York, the two notes were governed by the rate of interest in that state. It was error for the trial court to hold that complainant was entitled to interest at 8 per cent. The superintendent of banks is a state officer, not a mere court receiver, and as such had authority to prosecute this appeal. Code 1923, §§ 6276, 6278, 6306, 6308, 6297; Montgomery B. & T. Co. v. Walker, 181 Ala. 368, 61 So. 951.

Rushton, Crenshaw & Rushton, of Montgomery, for appellee.

The superintendent of banks is a mere agent of the court for collection and distribution of assets and has no greater power or authority than an ordinary chancery receiver. In liquidating the affairs of an insolvent bank, such superintendent cannot appeal from a decree allowing the claim of a creditor, as he has no interest in the distribution. Sterrett v. Bank (C. C. A.) 246 F. 753, 3 A. L. R. 256; Id., 248 U. S. 73, 39 S. Ct. 27, 63 L. Ed. 135; Coffey v. Gay, 191 Ala. 137, 67 So. 681, L. R. A. 1915D, 802; Cobbs v. Vizard Inv. Co., 182 Ala. 372, 62 So. 730, Ann. Cas. 1915D, 801; Walker v. Mutual Alliance Co., 196 Ala. 154, 71 So. 697. The terms of the agreement under which collateral is taken may authorize it to be held for the satisfaction of all debts which may accrue against the pledgor, and, if so, it may be applied to satisfaction of any debt upon which the pledgor may at any time become liable to the pledgee. 21 R. C. L. 654; 31 Cyc. 795; Selma Bridge Co. v. Harris, 132 Ala. 179, 31 So. 508. The law of the place where the contract is to be performed governs a contract of guaranty. The guaranty of the Merchants' Bank was payable at its place of residence, and is subject to interest at the Alabama rate. Code 1923, § 9087; 8 C. J. 1108; Crawford v. Branch Bank, 6 Ala. 12, 41 Am. Dec. 33.

THOMAS, J. Discussions of phases of this case are reported as Montgomery v. Chemical Nat. Bank, 209 Ala. 585, 96 So. 898, and Chemical Nat. Bank v. Jackson, 214 Ala. 458, 108 So. 53.

In Coffey v. Gay, 191 Ala. 137, 67 So. 681, L. R. A. 1915D, 802, the bank had been placed in the hands of a receiver by order of the chancery court; held that, though the receiver was authorized to institute action, the same court having decided against the claim, said receiver cannot appeal without consent. And such was the effect of the decision in Cobbs, Receiver, v. Vizard Investment Co., 182 Ala. 372, 62 So. 730, Ann. Cas. 1915D, 801. In Walker, Supt., v. Mutual Alliance Trust Co., 196 Ala. 154, 158, 71 So. 697, where it is declared that the superintendent of banks was proceeded against as a quasi trustee or receiver of the court administering the trust, that his activities can be controlled by that court within proper bounds.

The right of those standing in trust relation (trustees, executors, and administrators) to appeal, as a party aggrieved, was given a general discussion in Bryant v. Thompson, 128 N. Y. 426, 28 N. E. 522, 13 L. R. A. 745, and a difference of opinion developed. In this jurisdiction no such doubt is entertained of the right of executors and administrators to appeal, under our statute giving the right on application of either party or his personal representative. Sections 6078, 6079, 6088, Code of 1923.

In Bosworth v. Terminal R. Ass'n, 174 U. S. 182, 19 S. Ct. 625, 43 L. Ed. 941, Mr. Justice Brewer declared generally: (1) A receiver may defend, both in the court appointing him and appeal, the estate in his possession against all claims which are antagonistic to the rights of both parties to the suit. Wiley Fert. Co. v. Carroll, 202 Ala. 335, 80 So. 417. (2) He may defend the estate against all claims which are antagonistic to the rights of either party to the suit, subject to the limitation that he may not in such defense question any order or decree of the court distributing burdens or apportioning rights between the parties to the suit, or any order or decree "resting upon the discretion of the court appointing him." Cobbs, Receiver, v. Vizard Co., 182 Ala. 372, 62 So. 730, Ann. Cas. 1915D, 801; Wiley Fert. Co. v. Carroll, 202 Ala. 335, 80 So. 417. (3) Neither can such officer of the court question any subsequent order or decree of the court "distributing the estate in his hands between the parties to the suit." Wiley Fert. Co. v. Carroll, supra. That an intervener does not come within this last-stated rule as to the parties to the suit. (4) A receiver may appeal from an order or decree which "affects his personal rights, provided it is not an order resting in the discretion of the court." Thus he may not appeal from an order discharging or removing him, or directing him in the administration of the estate, for such orders delay or interfere with the due and orderly administration of the estate; and may appeal from an order disallowing him fees or commissions (Clifford v. Montgomery, 202 Ala. 609, 81 So. 551), for such a matter is not purely of discretion of the court and does not delay or interfere with the orderly administration of the estate. (5) The right of the receiver to appeal "from an allowance of a claim against the estate does not necessarily fail when the receivership is terminated to the extent of surrendering the property in the possession of the receiver." See, also, general authorities collected in L. R. A. 1915D, 802 et seq. The decision in Sterrett v. Second National Bank, 248 U. S. 73, 39 S .Ct. 27, 63 L. Ed. 135, 137, under sections 3509, 3511, 3512, 3560, Code of Ala. 1907, is not to the contrary.

The provisions of statute creating the banking department are Gen. Acts 1911, pp. 50–89, as amended by Gen. Acts 1915, pp. 88–103, and suits for the collection of debts of a bank in the course of liquidation held properly brought in the name of the superintendent of banks in his official capacity (Slaughter v. Green, 205 Ala. 250, 87 So. 358), and to maintain suits against such official in his representative capacity, in a proper case (State v. Jefferson Co. Bank, 200 Ala. 287, 76 So. 53; Walker, Supt., v. Mutual Alliance Trust Co., 196 Ala. 154, 157, 71 So. 697; Green v. McCord, 204 Ala. 364, 85 So. 752).

On former appeal in this case, Montgomery v. Chemical Nat. Bank, 209 Ala. 585, 96 So. 898, the bill was by the Chemical Nat. Bank against the superintendent of banks. It is declared of the Banking Act (Acts 1911, p. 50) that:

It "indicates that, when the superintendent takes charge of the affairs of an insolvent bank, he becomes a statutory assignee of its assets, a receiver with such powers and duties as are usually incident to receiverships, and hence he takes its property subject to all equities which exist when he takes possession. 7 C. J. 735."

The authorities cited do not deny the right of the superintendent of banks to appeal without the consent of the court, in which, as such official, he is a party litigant. That state official is the appointee of the Governor, by and with the consent of the Senate, must duly qualify, is removed from office for reasons specified as neglect, malfeasancé, misfeasance, corruption, incompetence, unfitness, etc., and offenses involving moral turpitude, etc., committed under color of office, "by the same proceedings as is provided for the removal of sheriffs from office." Acts 1911, p. 52. He is required to have a seal of office, has authority to administer oaths, to inspect and require state banks to keep unimpaired their capital stock, report to directors of banks with request, and by and with the consent of a majority of the "banking board," for causes stated in the act, "take possession of the property and business of said" corporation or individual banker, until said institution shall be permitted under the law to "resume business or its affairs be finally liquidated," as provided by the law.

It is further provided by the act (section 10, pp. 61, 62):

"After the superintendent has taken possession of a bank or business of an individual banker, the superintendent may permit such bank or individual banker to resume business upon such condition as may be approved by him, including an observance of all the requirements of law, and making good all deficits in the previous observances of law. Upon taking possession of any of the property and business of any bank or individual banker, the superintendent is authorized to collect moneys due to such corporation or individual banker and to do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof as hereinafter provided. The superintendent shall collect all debts due and claims belonging to the bank, and the superintendent, by making application to the circuit or chancery court in the county in which the bank is located, may procure an order to sell or compound all bad or doubtful debts, and on like order may sell all real and personal property of such corporation or individual banker on such terms as the court shall direct, but on any such court proceedings, the bank or individual banker shall be made a party by proper service issued from the court, and the hearing of any such application or petition of the superintendent may be had at any time after the bank or individual banker has had five days' notice of the application. Whenever any corporation doing a banking business or individual banker of whose property and business the superintendent has taken possession of as aforesaid deems itself aggrieved thereby, it may at any time within ten days after taking such possession, apply to the chancery court or other court of like jurisdiction in the county where the principal office of such bank or individual banker is located, to enjoin further proceedings by the superintendent; and the court, after citing the superintendent to show cause why further proceedings should not be enjoined and hearing the allegations and proof of the parties and determining the facts, may upon the merits dismiss such application or enjoin the superintendent from further proceedings and direct him to surrender such business and property to such corporation or individual banker; and any such application for injunction may be heard at any time after one day's notice from the time of service on the superintendent, in the discretion of the court."

He is empowered to appoint agents, counsel, and assistants to aid in "liquidation and distribution," as the "superintendent himself could in person do and perform," to pass upon claims against banks being liquidated and give notice thereof, to defend action upon claims duly brought to the court having jurisdiction of the affairs of the bank by the claimant (page 63), to take possession of property and assets of such "corporation or individual banker," make and file required inventory and list of claims, deposit the moneys collected, and:

"At any time after the expiration of the date fixed for the presentation of claims, the superintendent may, out of the funds remaining in his hands, after the payment of expense, declare and pay one or more dividends to creditors, and after the expiration of one year from the first publication of notice to the creditors to present claims, he may declare and pay a final dividend, such dividend to be paid to such persons and in such amounts and upon such notice as may be directed by the circuit, chancery or other court of like jurisdiction, having jurisdiction of the cause in the county in which the principal office of such corporation or individual banker is located. Objections to any claim or deposit not rejected by the superintendent may be made by any party interested, by filing a copy of such objections with the su-

perintendent, who shall present the same to the court having jurisdiction before the time of the next application to declare a dividend. The court may make proper provisions for unproved or unclaimed deposits." Gen. Acts 1911, p. 64.

[1-3] The foregoing is sufficient to show that the superintendent of banks is more than a mere receiver or trustee acting only by and under the authority of the court having jurisdiction of a pending case. The fact that, as a party litigant, he is subject to the order or judgment of the court having jurisdiction of the fund or claim, made the subject of litigation under the statutes, does not require the consent of that court as a condition precedent to the appeal. As such official and quasi trustee, it is his duty to preserve the fund and duly disburse the same under the law. In many cases before this court by the several superintendents of banks—Green, Montgomery and Jackson—it has been conceded that the superintendent of banks was a party at interest, having the rights of a party litigant, and that he may appeal or be brought in under the general statutes obtaining. And several such appeals have been heard by this court. Such is the right and duty of the superintendent of banks when thought by that official necessary to a due determination of the claim, ownership, or distribution of funds being administered by him in his official capacity. This appeal by A. E. Jackson, as superintendent of banks, will be heard on its merits.

Is the decision of the lower court correct in the direction that the Chemical National Bank be permitted to apply the proceeds of collateral to the payment of "the Hall-Beale debt," with interest at "8 per centum per annum?" The direction on former appeal is that complainant is entitled ."to participate, pari passu with other creditors, in distributions of the assets of the Merchants' Bank." 214 Ala. 458, 465, 108 So. 53, 60.

In the first instance, the Merchants' Bank borrowed from the appellee the sum of money indicated and deposited as security therefor certain collateral, and that collateral was "also" pledged "as collateral security for all other present or future demands of any and all kind of the holder thereof against the undersigned (being Merchants' Bank, by B. L. Gaddis, Jr., its President, B. Frank Noble, Cashier), whether created directly or acquired by assignment, whether absolute or contingent, whether due or not due, including any indorsement or guaranty made by ——, the following mentioned property, to wit." (Sundry notes.) Pages 87, 89, 90, 91 of the original record. Later, the same bank borrowed other sums and gave notes in the same language as that we have indicated, and deposited with it other collateral, notes of its customers; said collateral note contained like stipulations for collateral, and that it was held as security for "all other present or future demands of any and all kind," as we have indicated. These collateral notes were made payable to said Chemical National Bank of New York at said bank, in the City of New York, New York, and there was a letter from B. L. Gaddis, Jr., president, to said bank of drafts of Hall-Beale Cotton Company, guaranteeing cotton collateral, and that if not paid at maturity, "we will look after this paper ourselves," and bore interest at the rate of 6 per cent. per annum, the rate of interest allowed by the statutes of New York.

The Chemical Bank collected from the collateral so deposited and held by it a sum sufficient to pay the said original notes, with interest on "partial payment," and on August 10, 1922, the Chemical National Bank had a surplus of $756.03. Under the order of the trial court, the register applied this surplus and all other collections made from said collaterals to the payment of (1) interest on $93,780 of the Hall-Beale indebtedness, and (2) to the principal thereof until the collateral was exhausted.

The inquiry is, Had the officers signing the notes by the Merchants' Bank due authority to bind the corporation within the terms of the collateral notes, and was the Hall-Beale indebtedness of $93,780 a liability of said bank to the appellee bank? The effect of that decision (214 Ala. 460, 461, 108 So. 53) is that the bank's president was authorized by resolution of its directorate and by its holding him out as its managing head, or alter ego, in all of its affairs so to bind the Merchants' Bank by guaranty of Hall-Beale indebtedness to the appellee.

Aside from the insistence of the admission in the pleadings by the superintendent of banks, that "complainant held a large amount of bills receivable, deposited by said Merchants' Bank with it as security for the payment of the notes of said bank aggregating $100,000, and for any other obligation of said Merchants' Bank," the fact remains that, on former appeal in this case (214 Ala. 458, 465, 108 So. 53, 60), it was declared:

"The fact is that without the transaction immediately in question the Merchants' Bank was indebted to the Chemical Bank in the sum of $33,780, as well as $60,000, and, though repudiating the transaction by which the release of the $60,000 note was obtained, had the right to realize upon the collateral taken prior to the cotton transaction and apply the surplus proceeds in satisfaction pro tanto of the debt incurred in that transaction. The superintendent of banks claimed only in the right and title of the bank. It is not suggested that he had any better right or title. The proceeds, then, had to be credited to the bank. If the guaranty was a binding agreement, they were properly credited on the $33,780 note. If the guaranty was conceived in fraud, it is not perceived that appellant or the bank had any interest to be served by crediting them in one place rather than another. We are of opinion, therefore,

that the facts in evidence furnish no reasonable ground on which to hold that appellant, pending its bill in this cause, sought to ratify, or did in fact ratify, the contract of guaranty in part, and thereby estopped itself to maintain this suit. * * * The Chemical Bank is entitled to participate, pari passu with other creditors, in the distributions of the assets of the Merchants' Bank."

We perceive no good reason why we should depart from this decision. The evidence is there reviewed and held sufficient to authorize the appellee bank to rescind the subsequent transaction and restore the original obligation of the Merchants' Bank for the whole or original indebtedness and that of the Cotton Company.

[4] It must be admitted that if the right existed to apply the collateral to the payment of the principal, it may also be applied to the interest that had duly accrued. The rate of interest in Alabama is different from that in New York—being, respectively, 8 and 6 per cent.

The instruments evidencing the debt contain the words:

"New York, Oct. 11, 1920. Accepted payable at 270 Broadway. The Chemical National Bank of New York by R. B. Raynor, Manager Foreign Dept."

The draft by Hall-Beale Cotton Company was on said Chemical Bank and the credit extended there. In the case of Crawford v. Branch Bank, 6 Ala. 12, 41 Am. Dec. 33, the place of payment was not specifically stated as in the instant bills of exchange.

In Atwood v. Benson (Ala. Sup.) 109 So. 361,[1] speaking of the effect of the statute (Code of 1923, § 9086), the observation is made that the maker of negotiable paper engages to pay it "according to its terms."

[5-7] The alleged guaranty of President Gaddis for and on behalf of the Merchants' Bank was to pay the same in New York— the designated place of acceptance and payment. This is its effect, notwithstanding the letter of Gaddis written in Alabama to the Chemical National Bank, to take care of said acceptances if not paid at maturity. Under such facts, the interest on that guaranty would be at New York and at the rate of 6 per cent. That the credits were given, respectively, to the Merchants' Bank in New York, and the Hall-Beale Cotton Company by the bank in Montgomery, is shown by witness Noble. We take judicial knowledge of the former record (N. C. & St. L. R. v. Crosby, 194 Ala. 338, 350, 70 So. 7), and, of this, the agreement is that said record is before us. As to the facts entering into the question of the rate of interest, appellant's distinguished counsel make the apt observation that the acceptances of the Hall-Beale Cotton Company drafts were, at the time when (and where) the release, such as it was, was executed by

the Chemical Bank was given (in New York), incorporated into the notes of that Cotton Company, payable in New York. This was the implication of the obligation and liability held on former appeal. Green v. Stone, 205 Ala. 381, 87 So. 862. Such was the subsequent interpretation of the parties as to interest. The "statement rendered by appellee (Chemical National Bank) to the superintendent of banks, showing the application of the proceeds of collateral" of said Merchants' Bank, was at 6 per centum. This was shown that it was the intention of the appellee bank, that interest on the Hall-Beale Cotton Company indebtedness was 6 per cent. per annum; and such is the law of the case under the evidence.

The judgment of the circuit court is reversed in part, that interest may be computed at the rate of 6 per cent. rather than at 8 per cent., as was done in the premises, and otherwise is affirmed.

Affirmed in part, and in part reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.

