(76 South. 908)

ALABAMA CITY, G. & A. RY. CO. v. LEE.
(7 Div. 797.)

(Supreme Court of Alabama. June 21, 1917. Rehearing Denied Nov. 22, 1917.)

1. STREET RAILROADS ⬤110(1)—INJURIES ON TRACK — PLEADING — SUBSEQUENT NEGLIGENCE.

In an action against a street railway for injuries in collision, a count charging the discovery of plaintiff in a perilous position charged with sufficient certainty and precision that defendant's motorman discovered not only plaintiff's presence, but also the peril of his situation, and thereafter neglected available measures to secure his safety.

2. APPEAL AND ERROR ⬤1040(6)—HARMLESS ERROR—SUSTAINING DEMURRERS TO PLEAS.

In an action against a street railway for injuries in collision, where the railway's special pleas of contributory negligence, eliminated on demurrers, were not available in defense of the count of the complaint for subsequent negligence, the ruling on the demurrers to the pleas was harmless to the railroad.

3. STREET RAILROADS ⬤117(12) — INJURIES ON TRACK — SUBSEQUENT NEGLIGENCE OF MOTORMAN—QUESTION FOR JURY.

In such action, whether or not the judgment and resulting actions of the railway's motorman upon discovering the approach of plaintiff and his passage upon the track were in accordance with the standard of prudence justly demanded by the circumstances apparent to the motorman, was for the jury.

4. STREET RAILROADS ⬤114(20) — INJURIES ON TRACK—WANTON INJURIES—SUFFICIENCY OF EVIDENCE.

In such action, evidence *held* to justify the jury in drawing the inference of wantonness in support of the wanton injury count.

5. APPEAL AND ERROR ⬤1061(4)—HARMLESS ERROR—REFUSAL OF AFFIRMATIVE CHARGE.

In such action, where the verdict, in view of injuries suffered by plaintiff, did not embrace any punitive damages, the refusal of the general affirmative charge for the railway on the wanton injury count was harmless to it.

6. APPEAL AND ERROR ⬤1050(1)—HARMLESS ERROR—EVIDENCE.

In such action, where a witness testified that when he first looked at the motorman the latter was looking at the courthouse, and was not winding up the wheel or shutting off the power, and that plaintiff was under the platform when he first started winding up the wheel, the admission of his testimony that the motorman was not trying to stop the car when the witness first looked at him was harmless to the railway.

7. DAMAGES ⬤172(1)—PERSONAL INJURIES—EVIDENCE—RELEVANCY.

In an action against a street railway for injuries, plaintiff's testimony, as to his earnings per month, that in the sawmill business he had made as high as $100 a month, if intended to state that plaintiff's sawmill business yielded him that sum in profits was objectionable as irrelevant to his damage by loss of time.

8. DAMAGES ⬤172(1), 176 — PERSONAL INJURIES—EVIDENCE.

In such action, plaintiff having stated he was a sawmill man, his testimony, as to his earnings per month, that he had made in the sawmill business as high as $100 a month, was not irrelevant on his damages by loss of time, or improper as stating the profits of his sawmill business, since the natural import of the testimony included only plaintiff's personal earnings as wages or salary.

9. WITNESSES ⬤269(6) — CROSS-EXAMINATION.

In an action against a street railway for injuries on its track, the question, to the railway's motorman on cross-examination, whether he could have run slower if he had been careful, was proper.

10. STREET RAILROADS ⬤113(5) — INJURIES ON TRACK—EVIDENCE.

In an action against a street railway for injuries, where the railway's motorman testified without objection that 1½ to 2 miles an hour was not as slow as he could run the car, his testimony, in answer to whether he could have run slower than 2 miles an hour if he had been careful, that he could have run the car slower if he had tried, was not erroneous.

11. APPEAL AND ERROR ⬤1050(1) — HARMLESS ERROR—EVIDENCE.

Defendant street railway's motorman's testimony on cross-examination, being a repetition of his previous statement, unobjected to, that 1½ miles an hour was not as slow as he could run the car, was harmless to the railway, if erroneous.

12. TRIAL ⬤251(8)—INSTRUCTIONS—ISSUES.

In an action against a street railway for injuries on its track, the complaint charging only simple subsequent negligence, wanton negligence, and willful injury, the requested charge that it is essential, for the negligence to be wanton, that the act done or omitted should be done or omitted with a knowledge and present consciousness that injury would probably result, etc., was properly refused; willful negligence not being an issue in the case, while the ingredients of wanton negligence were sufficiently explained in the oral charge and in the written charges.

13. STREET RAILROADS ⬤118(15)—INJURIES ON TRACK—INSTRUCTION.

In such action, the requested instruction that a consciousness of probable injury is not to be implied from a mere knowledge of the dangerous situation was properly refused as bad, though a consciousness of probable injury is not implied as matter of law from a knowledge merely of the elements of the dangerous situation.

14. TRIAL ⬤315—VERDICT—QUOTIENT VERDICT—SUFFICIENCY OF EVIDENCE.

In an action against a street railway for injuries on its track, evidence *held* to show not that the verdict was a quotient verdict, but that one juryman roughly aggregated the individual assessments of damages suggested, and presented the average sum as a basis for adoption as the verdict by general ballot.

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**15. TRIAL ☞315—VERDICT—QUOTIENT VERDICT.**

It is not unlawful for a juryman roughly to aggregate the individual assessments of damages that have been suggested, and to present the average sum as a basis for adoption as the jury's verdict by a general ballot; the fact vitiating a quotient verdict seemingly being the agreement in advance to abide by the result.

Appeal from City Court of Gadsden; John H. Disque, Judge.

Action by William P. Lee against the Alabama City, Gadsden & Attalla Railway Company for damages for injuries in a collision. From a judgment for plaintiff, defendant appeals. Affirmed.

Plaintiff was injured by a collision with one of defendant's cars while passing obliquely across defendant's street car track which formed part of the surface of a public street in the city of Gadsden. The case went to the jury on the fourth and fifth counts only. The fourth count charges negligence as follows:

And plaintiff avers that his said injuries and damages were proximately caused by the negligence of defendant's motorman who had control of the movements of said car at the time, in that said motorman negligently caused or allowed said car to run against plaintiff, or to drag plaintiff a great distance, to wit, 30 feet, and inflict said injuries and damages after he had discovered plaintiff in a perilous position in advance of said car on said track, or so near thereto that he would be struck by said car as it moved forward on said track. To this count defendant interposed several pleas of contributory negligence, to all of which demurrers were sustained.

The fifth count charges that the motorman willfully, wantonly, or intentionally caused or allowed said car to run against plaintiff, (and) to drag him a great distance, to wit, 30 feet, on said brick pavement. The defendant duly excepted to the following paragraph of the oral charge:

If this motorman saw this plaintiff coming in the direction of that track in front of the car, they had a right to assume that he would stop before the car reached him; but if this motorman, seeing this man coming up towards the track in front of the car, if he saw from the manner an indication on the part of this plaintiff that he was not paying any attention to the car, that he was not paying any attention to the alarms to be given, either by crying out or by the sounding of the gong, if one was sounded, then it was his duty under the law to have stopped that car, and thus avoided this injury, if that state of facts shall appear to you to be reasonably true under the evidence in this case.

In this connection the trial judge further instructed the jury as follows:

Of course, gentlemen, if this motorman did not discover this perilous position of this woman until it was too late for him to use preventive efforts, or preventive efforts would not have been of any avail, then, gentlemen, there can be no recovery under this count; but on the other hand, if he did discover this man's perilous position, either that he was on the track or so near to it that he would likely be injured, and this motorman failed to use all the preventive means at his hand, and known to men skilled in that business, and failed to stop that car, and

as a proximate consequence this man was injured, then defendant would be liable.

The following charges, properly requested in writing, were refused to defendant:

(1) That the omission of any act by the motorman is not wanton or willful negligence if he had no evil purpose, or intent, or consciousness, of probable injury.

(2) It is essential for the negligence to be wanton that the act done or omitted should be done or omitted with a knowledge and present consciousness that injury would probably result, and this consciousness is not to be implied from a mere knowledge of the dangerous situation.

The defendant also requested the affirmative charge as to both counts, which was refused. The assignments of error relative to evidence are sufficiently stated in the opinion.

Goodhue & Brindley, of Gadsden, for appellant. Hood & Murphree, of Gadsden, for appellee.

SOMERVILLE, J. On the theory that count 4 of the complaint was for subsequent negligence, the trial court sustained demurrers to each of the several pleas of contributory negligence filed in answer thereto. Appellant's contention is that this was erroneous because count 4 is not in fact a subsequent negligence count; and our attention is called, to quote from the brief:

"To the very obvious distinction between the discovery of plaintiff in a perilous position [as alleged in the count], and the discovery of or being aware of the perilous position of plaintiff."

[1] While we confess to a weakness for the niceties of verbal expression, and to some partiality for Dr. Butler's famous logician who "could divide a hair 'twixt nor' and nor'west side," yet, for the practical purposes of jurisprudence, we must reject the interpretational refinement here propounded by appellant. We think the count charges with sufficient certainty and precision that the motorman discovered not only the presence of plaintiff, but also the peril of his situation, and thereafter neglected available measures to secure his safety. Moreover, the instructions given the jury by the trial judge, both oral and written, left no room for any misunderstanding by them of the true issue presented by this count and the law applicable thereto.

[2-5] It follows that the special pleas eliminated on demurrer were not available in defense of the fourth count, and the ruling thereon cannot be complained of as prejudicial. Whether or not the judgment and resulting actions of the motorman, upon discovering the approach of the plaintiff and his passage upon the track, were in accordance with the standard of prudence justly demanded by the circumstances apparent to the motorman, might be differently viewed by reasonable minds. Hence we conclude that the trial judge properly refused to give for defendant the general affirmative charge

on this count. So, also, in view of the locality, and its use by the public, and testimony tending to show inattention by the motorman to the track in front of his car, inference of wantonness might have been drawn by the jury in support of the wanton count. But we may safely surmise that, in any case, the verdict does not, in view of the injuries unquestionably suffered by plaintiff, embrace any punitive damages, and the refusal of the general affirmative charge for defendant on that count was without prejudice to defendant. In this connection, we may as well say here as later that while, as jurors, we would probably have found for defendant under both counts, we do not feel justified in reversing the action of the trial judge in overruling the motion for a new trial, so far as the weight of the supporting evidence is concerned.

[6] Plaintiff asked one of his witnesses, who had testified to observing the motorman just before the collision, "Was he trying to stop that car when you first looked at him?" Over defendant's objection, the witness was allowed to answer, "No." It is to be conceded that when a witness undertakes to state what another was trying to do, the witness may be in some cases stating an opinion or conclusion which ought not to be admitted in evidence. So it was held in B. R. L. & P. Co. v. Randle, 149 Ala. 539, 43 South. 355, that a witness was properly excluded from testifying that a motorman "seemed to try to stop the car as quick as he could." On the other hand, it was held in B. R. L. & P. Co. v. McLain, 162 Ala. 656, 50 South. 149, that a witness could be allowed to state whether the motorman "made any effort to stop the car," since that was a fact which was open to the view of any one who saw the motorman. In the present case, the witness testified that when he first looked at the motorman he was looking over at the courthouse, and was not winding up the wheel or shutting off the power, and that the plaintiff was under the platform when he first started winding up the wheel. We think the ruling complained of was without prejudice to defendant.

[7, 8] In response to a question to plaintiff, "Before you were injured, how much did you earn per month?" he was allowed to answer, "I have made in the sawmill business as high as $100 per month." If the witness intended to say that his sawmill business yielded him in profits $100 a month, his answer was clearly objectionable as being irrelevant to the inquiry with respect to his damage by loss of time. But we cannot say from the record that he was referring to such profits. He has stated that he was a "sawmill man," and we think the natural import of the question, as well as of the answer, included only his personal earnings as wages or salary. On its face the answer was competent, and its illegal aspect, if so it was intended, should have been exposed by apt cross-examination.

[9-11] On cross-examination of defendant's witness, its motorman in charge of the car in question, he was asked, "If you had been careful, you could have run slower than that [about 2 miles an hour]?" His answer was, "Well, I could have run it slower if I had tried." The question was certainly proper on cross-examination. The answer, however, avoided the point of the question as to carefulness, and was, in fact, but a repetition of his previous statement, not objected to, that 1½ to 2 miles an hour "is not as slow as I can run that car." There was neither error nor prejudice in this.

Standing alone, that part of the court's oral charge to which defendant excepted was undoubtedly erroneous, and would require the reversal of the judgment. But its prima facie erroneous aspect is entirely relieved and cured by the contextual explanations accompanying it, so that the jury could not have misunderstood the nature of the motorman's duty with respect to his stopping of the car, if by reasonable diligence he could have done so after his discovery of plaintiff's peril. This limitation is made perfectly clear by the oral charge.

[12] Written charge No. 2 was properly refused. "Willful negligence" was not an issue in the case, for the complaint charged only simple subsequent negligence, wanton negligence, and willful injury. In the oral charge the phrase "willfully done" was sufficiently explained as meaning "purposely done," and was applicable to the charge of willful injury. So the ingredients of wanton negligence were sufficiently and clearly explained to the jury both in the oral charge and in the written charges given at defendant's instance.

We think, notwithstanding the arguments for appellant in this behalf, that the jury were made to fully understand the import of willful and wanton injury without the aid of this charge. We think, also, that it was, in any event, properly refused, because it instructed upon the irrelevant issue of "willful negligence."

[13] Written charge No. 6 was clearly bad, and was properly refused. It has, indeed, been held that a consciousness of probable injury is not implied as matter of law from a knowledge merely of "the elements of the dangerous situation." L. & N. R. R. Co. v. Brown, 121 Ala. 221, 226, 25 South. 609. The refused charge asserts that this consciousness "is not to be implied from a mere knowledge of the dangerous situation"—quite a different proposition from the one just preceding, and expressly denied by McClellan, C. J., in that very case, for he says:

"The jury may, in a proper case, infer such consciousness, willfulness or wantonness from his knowledge of the existing perilous conditions; but that this may be done is no excuse for the pleader's pretermission of their averment."

[14, 15] Finally, it is insisted that a certain scrap of paper picked up in the jury room after the verdict was rendered, considered in connection with the uneven sum awarded, shows that the verdict was a quotient verdict, which should have been set aside on defendant's motion.

The paper referred to is a page torn from a pocket memorandum book, and contains the figures 1360000 divided by 12, the division being carried through two figures—13. To these two figures are added the figure 6. It is conceived by appellant that this partial process of division evidences an agreement by the jurymen to lump their individual estimates of the damages to be awarded, and to award one-twelfth of the total, in view of the fact that a correct completed division of the same dividend would give a quotient of $1,-358 plus. In Sou. Ry. Co. v. Williams, 113 Ala. 620, 21 South. 328, it was held that such a calculation by a juryman, based upon a dividend sum shown to be the aggregate of 12 individual items, would prima facie show that the verdict was the result of a previous agreement, and was an unlawful quotient verdict.

The paper here exhibited does not show, except by a very doubtful implication, that 12 separate and individual sums were presented for aggregation and division by the several jurymen. Moreover, 12 small paper ballots were picked up, along with the other paper, and these show 11 affirmative votes and 1 negative vote. We think the fair implication is that one juryman roughly aggregated the individual assessments that had been suggested, and presented the average sum as a basis for adoption by a general ballot. Such a course was not unlawful. B. R. L. & P. Co. v. Clemons, 142 Ala. 160, 37 South. 925. Had there been a previous agreement, a ballot would have been unnecessary, and there would have been no negative vote. "The vitiating fact seems to be the agreement in advance to abide by the result." B. R. L. & P. Co. v. Moore, 148 Ala. 130, 42 South. 1024. We do not think the circumstances here shown are sufficient to impeach the legality of the verdict, either in reason or under the former decisions of this court.

Finding no error in the record prejudicial to appellant, the judgment must be affirmed. Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.