39 So.2d 649

**FORTSON et al. v. HESTER.**

**7 Div. 994.**

Supreme Court of Alabama.

March 17, 1949.

Rehearing Denied April 14, 1949.

144

Lusk, Swann & Burns, of Gadsden, and Chas A. Wolfes and Scott & Dawson, all of Fort Payne, for appellants.

W. Jay Tindle, of Fort Payne, for appellee.

STAKELY, Justice.

This is an action for damages for personal injuries brought by Aubrey Lee Hester, by next friend, against Elwyn Fortson individually and also against Paul Roden and Jerry Roden, individually and as partners, doing business as DeKalb Creamery. The complaint contains one count which charges willful or wanton misconduct. The trial of the case resulted in a verdict and judgment for the plaintiff. This appeal is from that judgment.

Assignments 4 to 9 inclusive. These assignments deal with the action of the court in refusing to give the affirmative charge in favor of the defendants. There was no error in this regard. Tendencies of the evidence showed the following. On January 31, 1948 Aubrey Lee Hester, a boy 13 years of age, was riding his bicycle in a southerly direction along Godfrey Avenue, a paved public street in the residential section of the City of Fort Payne in DeKalb County, Alabama. He was engaged in delivering newspapers to various customers along the route he served. It was a cold, rainy, foggy morning and he was riding his bicycle on the righthand side of the street. The time was about 6 A.M. when "good daylight had not broken" on account of cloudy conditions and the light on his bicycle was burning. A milk truck driven by the defendant Elwyn Fortson for Paul Roden and Jerry Roden, doing business under the firm name of DeKalb Creamery, was travelling in a northerly direction on its left side of the street and while on such left side of the street ran into the boy on his bicycle. The boy was dragged about 18 to 20 feet and then fell from under the left front fender, leaving him off the pavement on the truck's lefthand side. The movement of the truck was stopped when it hit a stump and a tree on its left side of the street. The truck travelled 43 steps from where it hit the boy until it came to a stop. The driver of the truck testified that he did not see the plaintiff, although he had his lights on and that it was foggy and raining. He did not apply his brakes until after he struck the boy. The driver was delivering milk. He did not, however, cut across the street to make a milk delivery. The next place of delivery was "about a good city block." The boy was severely and seriously injured.

Under the foregoing tendencies of the evidence the case was for the jury on the issue of wanton misconduct. The truck was on a public street in a residential district where people had a right to be and would likely be at 6 o'clock in the morning. The visibility was poor, but despite these conditions the truck was driven on the wrong side of the street and at a speed that caused the truck to travel about 43 steps from the point of impact until it was stopped by a stump off the street, up a slight bank on the lefthand side of the truck. Assuming that the driver of the truck did not intend a collision, the jury had the right to infer that he knowingly and wrongfully brought on a condition of danger, taking a chance that there was no one on the public street because he could not be sure of the absence of others because of poor visibility. Positive intent to bring about the collision was not necessary to constitute wantonness. Daniel v. Motes, 228 Ala. 454, 153 So. 727. And the fact that the driver did not see persons on the highway does not relieve his action of wantonness when he had knowledge that persons, though not seen, were likely to be in a position of danger and yet in conscious disregard of these known conditions of danger, he brought on the disaster by the manner of his driving. Godfrey v. Vinson, 215 Ala. 166, 110 So. 13; Newton v. Altman, 227 Ala. 465, 150 So. 698; Luquire Ins. Co. v. McCalla, 244 Ala. 479, 13 So.2d 865; Barrett v. McFerren, 231 Ala. 382, 165 So. 226; J. C. Byram & Co. v. Livingston, 225 Ala. 442, 143 So. 461.

Assignments 3 and 17. These assignments relate to the following question which was asked by plaintiff's counsel of Max Robertson, the Chief of Police, "I will ask you to state to the jury whether or not you know of your own knowledge that Elwyn Fortson was tried and convicted for reckless driving?" Objection

was made to the question and the court sustained the objection and charged the jury in substance that whether the driver was charged or tried in another court had nothing to do with the case before them and must not enter into their consideration of the case. The defendants made a motion for a mistrial which was overruled. There was no answer to the question asked the witness and nowhere in the record was there any effort to bring this matter back into the case. We feel satisfied that error, if any, was cured by the action of the court.

■ Assignments 1, 2, 14 and 15. The appellants contend that the court erred in qualifying the jury as to whether any member of the panel was an officer, director, employee or stockholder of or in the Maryland Casualty Company. Prior to the qualification of the jury there was a conference between the judge and attorneys on both sides of the case in the judge's chambers and outside the presence of the jury. At this conference counsel for appellant made known to the court that the appellants had a liability insurance policy in the Maryland Casualty Company to the extent only of $5,000 which would not indemnify the appellants in pending suits in the event damages were recovered in excess of this amount. The attorneys objected to the court's qualifying the jury panel unless the plaintiff first made some showing that he had reasonable ground to believe and did believe that some members of the jury panel were either officers, employees or stockholders in the Maryland Casualty Company. The court overruled the objection and propounded this qualifying question to the jury panel. There was no error in this ruling of the court. In a recent decision of this court in the case of Vredenburgh Saw Mill Co. v. Black, 251 Ala. 302, 37 So.2d 212, 216, this court quoted from Gammill v. Culverhouse, 217 Ala. 65, 114 So. 800, the following words of Mr. Justice Somerville: " 'Since our decisions in the case of Citizens' Light, Heat & Power Co. v. Lee, 182 Ala. 561 (30), 581, 62 So. 199, the rule has been firmly settled in this state that the plaintiff is entitled, upon his seasonable and proper motion, to have the jurors from whom the trial jury is to be selected qualified as to

their relation to, or interest in, any insurance company which would be liable, in whole or in part, for any judgment that might be rendered against the defendant. * * *' "

There is nothing in the present record to show that the conduct of counsel in presenting its motion for qualification of the jury was attended with circumstances calculated to prejudice the rights of the defendant. International Harvester Co. et al. v. Williams, 222 Ala. 589, 133 So. 270; Cooper v. Auman, 219 Ala. 336, 122 So. 351.

■ Assignment 16. This assignment is based upon the refusal of the court on motion to set aside the verdict on the ground that it was a quotient verdict. It is a settled rule in this state that when figures are shown which were used by the jury in its deliberations and from these figures a fair inference may be drawn that the verdict was a quotient verdict, the court will so hold and that the verdict was the result of a previous agreement, unless the contrary is shown. Mobile & O. R. Co. v. Watson, 221 Ala. 585, 130 So. 199. It is also settled that the evidence of jurors is admissible to sustain their verdict but jurors cannot testify to facts which tend to impeach their verdict. Mobile & O. R. Co. v. Watson, supra; City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264, 122 A.L.R. 637. We set out excerpts from our decisions which define a quotient verdict.

"A quotient verdict is a gambling verdict, one rendered pursuant to agreement, expressed or implied, to, abide by the results; no juror knowing what verdict he is to render, each of the jurors being free to increase or decrease it by the figures he may name. * * *" City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264, 268, 122 A.L.R. 637.

"The test in such cases is: Did the jury agree to be bound beforehand by the result of such proceedings? If so, the verdict will be set aside. But if the result was reached, and no agreement had beforehand to abide by it, and it was afterwards agreed upon as their verdict, it will be sustained." International Agr. Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, 554, 49 L.R.A.,N.S., 415.

In the case of Alabama City, G. & A. R. Co. v. Lee, 200 Ala. 550, 76 So. 908, this court held that it is not unlawful for one juryman to aggregate roughly the individual amounts that had been suggested and to present the average as a basis for the adoption of a general verdict.

In support of the motion to set aside the verdict on the ground that it was a quotient verdict, an affidavit made by one of the attorneys for the defendant was filed. In substance it showed that after the jury had rendered their verdict he had remained in and about the court room in connection with another case and in this connection while the janitor swept out the main court room and before he had swept out the jury room, he had occasion to go in the jury room and there found a crumpled piece of paper which is attached to the motion as Exhibit A and also another crumpled piece of paper which is attached to the motion as Exhibit B. These exhibits appear to form what was originally one sheet of paper. On Exhibit A is a verdict for the plaintiff for $20,000 and on Exhibit B appear some figures. These figures show that the sums of 100,000; 80,000; 30,000 and 45,000 were added totalling 255,000 and this aggregate amount then divided by 12, resulting in a quotient of 21,500.

On information and belief affiant states in the affidavit that when the jury retired to consider their verdict they were divided in their opinion as to the amount of damages plaintiff suffered, the opinions varying in amount from $15,000 to $30,000 and when it seemed that no agreement could be reached it was suggested that the foreman write down on a piece of paper the amount of damages each of the jurymen considered the plaintiff entitled to and in doing so the foreman grouped the like amounts and arrived at a total of $255,000 as follows:

```
"4 jurors said $25,000.00 each, total $100,000.00
 4 jurors said $20,000.00 each, total $ 80,000.00
 1 juror  said $30,000.00        total $ 30,000.00
 3 jurors said $15,000.00 each, total $ 45,000.00
                                       -----------
                                       $255,000.00"
```

The affidavit further shows that this total of $255,000 was divided by 12 and a quotient of $21,250 received and that the jurymen having agreed to take as their verdict the nearest amount in round figures to the amount so secured as a quotient $20,000 was agreed upon as their verdict.

However, as against the motion plaintiff's counsel presented an affidavit of Alvin M. Arrington who was the foreman of the jury. We quote from the affidavit as follows:

"The jurors agreed that I was to act as foreman of the jury. After we discussed the case for a while, and all the jurors agreed that the plaintiff should recover a verdict, we got around to discussing the matter of how much damages we should assess. In this discussion it appeared that all the jurors did not have in mind the same exact amount, and so I took a small piece of paper and began making some calculations upon it. As we discussed the matter I made some figures on the paper and got an expression from the various men on the jury as to what they thought was a fair and reasonable amount.

"After they all suggested amounts I figured it out and told them what sum I had arrived at by taking an expression from each one. As I recall it was something over $21,000. We talked a little more about it, and finally agreed that we would return a verdict for $20,000 which we did. I wrote a verdict for $20,000 and we went into court with it. The judge informed us that we should name the defendants in the verdict against whom we had found and so we went back in the jury room and I wrote another verdict for $20,000 and put the name of the defendants like the judge informed us. This was our final verdict in the case. No other juror wrote on any paper so far as I know. The other jurors did not submit slips of paper, but their suggestions were received in a general discussion around the table.

"We did not agree before I put down the figures that we would all submit a sum or amount and then divide the total by twelve and be bound by the result. In fact nothing was said about us being bound by how the figures came out before I put them down or even after I had figured it out.

"The reason I put the figures down was to make a rough estimate of how the fellows stood and to get some basis from which to see how much our verdict should be.

"After we discussed the matter after the figures were made we all were in agreement that $20,000 would be a reasonable verdict in the case."

On the hearing on the motion defendant's counsel cross-examined Alvin M. Arrington about the facts stated in the affidavit before the court. He testified in substance in accordance with his affidavit and among other things that there was no agreement about putting the figures down and dividing the sum by 12.

We think it clear that the court was correct in holding that there was no quotient verdict because there was no agreement made in advance to abide by the result of the figures. Ewart v. Cunningham, 219 Ala. 399, 122 So. 359; Birmingham Railway Light and Power Company v. Clemons, 142 Ala. 160, 37 So. 925, and authorities supra.

Assignments 11, 12, 13 and 18. These assignments are based on the action of the court in overruling the motion for a new trial. It is the insistence of the appellants that the motion should have been granted because the verdict of the jury was contrary to the weight of the evidence and the cumulative effect of the various matters, which we have discussed, was to show a verdict produced by bias and prejudice. We consider that what we have said is sufficient to show that the court was not in error in overruling the motion for a new trial. The judgment of the lower court is due to be affirmed.

Affirmed.

BROWN, LAWSON and SIMPSON, JJ., concur.