224 So.2d 890

Rodell JONES

v.

STATE of Alabama.

4 Div. 348.

Supreme Court of Alabama.

July 3, 1969.

344

L. H. Walden, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

BLOODWORTH, Justice.

Defendant appeals from a conviction for second degree murder in the circuit court of Crenshaw County, Alabama.

The defendant was tried by a jury, on his plea of not guilty, found guilty and his sentence fixed at 25 years imprisonment in the penitentiary. His motion for a new trial was denied.

According to the State's witnesses, each of them was present at "The Club Together" at Helicon, in Crenshaw County, on the night the deceased Jimmy Junior Boykin was shot and killed. The defendant and the deceased were also present. The evidence showed the shooting took place in a dimly lighted room at the club. There were colored lights burning, red, yellow, green and blue. A large group of people were present. There was some loud conversation. Some present were dancing, at times to a rockola, and at other times to the melodies of a band, called "The Swinging Invaders," from Troy (Alabama).

One of the State's witnesses, Jimmy Smith, testified that the defendant and the deceased were arguing but he did not know what they were arguing about. He did not see the defendant shoot the deceased, but he heard a shot, the deceased caught himself and someone asked him if he was shot. Henry Jackson told defendant not to shoot any more and grabbed him. Dan Lee Johnson had the defendant on the floor tussling with him. He heard cursing going on, but did not know who was doing it.

Edgar Earl Knight, also known as "Bubba" Knight, testified for the State that the defendant and the deceased were arguing, that the defendant slapped the deceased whereupon the deceased pushed him off, that defendant then said, "You ————— —————, I will kill you" and he shot him. He saw the gun in the defendant's hand. The witness then left.

Marvin Reynolds (the deceased's brother-in-law) testified that he heard defendant say to deceased, "I will kill you, you ————— —————," and that at about that time he heard a shot but did not see the gun. Everyone started running and he asked the deceased if he was shot and saw blood stains on his shirt when he moved his hands. This witness ran out too.

Dan Lee Johnson (a friend of the deceased) was standing right by the deceased when he said the defendant walked up and asked the deceased if he wanted to run his car, that deceased replied, "No man, I don't want to run my car" and defendant said, "I'll make you run it." The defendant then slapped the deceased,

reached in his pocket, pulled out a .22 pistol, rubbed it across the deceased's nose, and said, "I am going to kill you, you _____ _____." He dropped his hand to his side, pulled the trigger and the deceased bent over. The witness then grabbed the defendant by the wrist, and they "went across the floor." He does not know wha. happened to the pistol.

Dr. V. D. Vanderhoeven testified for the State that the deceased died from blood loss and shock caused by two bullet holes in the aorta, the main artery that comes from the heart and goes down to the left of the third vertebra, where it splits into the two illiac arteries.

One State's witness testified that he saw a gun in the possession of the defendant outside the club before the shooting.

The defendant, who took the stand in his own behalf, denied any difficulty with the deceased, denied slapping him, denied the tussle with witness Johnson, denied having a gun and denied shooting the deceased.

On this appeal, defendant insists: There is not sufficient, creditable evidence to sustain the conviction; that the trial court erred in refusing to grant his motion for mistrial or motion for new trial, on account of a separation of the jury during the course of trial; that the trial court erred in allowing an affidavit of one of the jurors to be introduced in evidence on motion for new trial; and, finally, that the trial court erred in sustaining the State's objection to a question to Ruby Jones on motion for new trial regarding a difficulty she and the defendant (her son) were involved in while marching on civil rights business on the schools.

We have carefully studied the transcript of the evidence, and it is our opinion that there is sufficient evidence to sustain the conviction and overcome the presumption of innocence accorded the defendant. Therefore, we find no merit in the first proposition insisted on as error to reverse.

As to the jury separation, it appears there were four recesses during the course of the trial, the first soon after the jury was empaneled and some evidence had been taken. On the occasion of this first recess, three, four or five jurors (witnesses were not certain of the exact number) stayed in the jury box in the court room during the recess. They did not leave." The others left the court room, apparently under the care of the baliff, but one, juror Swanner, went by himself to the water fountain. He did not speak to anyone, either on the way to, at, or returning from the water fountain. Juror Harbin, while in the court room and in the presence and hearing of the judge, had a brief conversation with Attorney William King, who along with the district attorney, appeared for the State. The proof before the court was that the conversation concerned the Alabama-Auburn football game. On the occasions of the other recesses, all the jurors remained together under the custody of the bailiff.

Eleven of the jurors testified on motion for new trial. One juror, McLeon, who was sick and in the hospital testified by affidavit. All of the jurors testified that no one, other than fellow jurors (presumably in the jury room), mentioned or discussed the case outside of the court room. Juror Swanner specifically testified that he had no conversation with anyone on the occasion of his separation. Each of the jurors testified that nothing was said in his or her presence that influenced his or her verdict in any way, except what was said by fellow jurors (presumably in the jury room).

■ The rule is well-settled that a separation of the jury after the trial has been entered upon and before verdict, creates a ground for reversal in defendant's favor "unless the State affirmatively shows that the defendant was not thereby injuriously affected." King v. State, 266

Ala. 232, 236, 95 So.2d 816, 819; Franklin v. State, 45 Ala.App. 27, 221 So.2d 919, cert. den. 284 Ala. 729, 221 So.2d 921.[1]

In this case, after the first recess, defendant made a motion for a mistrial, outside the presence of the jury, on the "ground that the jury had not been in the custody of the bailiff at all times. * * * We think that is grounds for a mistrial." At this point, juror Swanner gave his testimony that he did not speak to anyone during his separation. Whereupon, the court denied the motion for a mistrial.

As we have said:

"* * * [T]he separation of the jury does not establish an absolute right to have a mistrial declared or a new trial granted but prejudice must result therefrom in order for a new trial to be granted. The right of the defendant in this respect is only prima facie and when a separation is shown, the burden is on the prosecution to establish affirmatively that the separating jury or juror conversed with no one as to the defendant's guilt and that no other influences were brought to bear on the jury or any of its members which might have biased their deliberations. * * *" King v. State, supra, at p. 236, 95 So.2d at p. 819.

With respect to juror Swanner, we think the record shows rather conclusively that he did not engage in any conversation with anyone during the time he was separated from the jury.

The Court of Appeals in Franklin v. State, supra, at p. 921 held that a juror's statement, "that he had not talked with anyone while outside the courtroom was sufficient to establish affirmatively that no improper influences were placed upon the juror so as to influence his verdict."

With respect to juror Harbin, he did not even remember having a conversation with attorney King about the Alabama-Auburn football game, but the court overheard the conversation and the defense attorney himself stated, "I am certain that no misconduct occurred as such, and the mere fact that the District Attorney [attorney King assisting the District Attorney] did engage in the conversation with one of the jurors."

On the basis of the record before us (almost one-half of the transcript being taken up with the interrogation of jurors on motion for a new trial), we are of the opinion the State has met the burden of proof to establish affirmatively that the separating jurors engaged in no conversation as to defendant's guilt, and that no other improper influences were brought to bear on the jury or any member which might have biased their deliberations.

As to defendant's claim of error on the part of the trial court in allowing the State, over his objection, to introduce an affidavit of the twelfth juror, Mr. McLeon, defendant argues that permitting such introduction deprived him of his constitutional rights of cross-examination and confrontation.

The record shows the State called the other eleven jurors to testify, and as to juror McLeon, the State announced, "* * * there is one member of the jury who is sick and in the hospital and unable to come to Court, and at this time we would like to offer in evidence an affidavit of what his testimony would be if he were able to come." The record further shows that at a prior hearing on motion for new trial, apparently an affidavit as to the same witness was discussed and it appears clear that defendant had notice that the State intended to offer such affidavit.

In Echols v. State, 34 Ala.App. 305, 307, 39 So.2d 44, 46, the Court of Appeals, speaking through then Judge Harwood (now Associate Justice on this court) said:

"The usual procedure, after a movant has established his prima facie right to

---

1. See Wright v. State, 262 Ala. 420, 79 So.2d 74, regarding "consent" to separation.

a new trial by showing a separation of the jury is for the State to submit evidence, *usually the testimony of the jurors themselves*, directed to showing the absence of any influence exerted on them, or attempted to be exerted, which might affect their consideration of the case involved." [Emphasis supplied]

But, Rule 22 of the Rules of Practice in the Circuit and Inferior Courts, Title 7, Code of Alabama 1940, as last amended, specifically provides for affidavits in support of motions for new trial. We have said, "The general rule is that the affidavit of a juror may be allowed to disclose facts to sustain the verdict." Harris v. State, 241 Ala. 240, 2 So.2d 431; Leith v. State, 206 Ala. 439, 90 So. 687; Echols v. State, supra. See, also, 7 Ala.Dig., Criminal Law, ⊜957(1), p. 106.

 We do not find any reversible error in admitting the affidavit under the circumstances of this case.

The final error insisted on by defendant is the sustaining of the State's objection to the question put by defendant's attorney to the mother of the defendant, Ruby Jones, on motion for new trial as to whether she recalled "any difficulty in which you and Rodell [the defendant] were involved in marching on civil rights business on the schools." Defendant's attorney stated his purpose in offering this testimony to show:

"* * * there was a difficulty in which this woman and her son were involved and that by reason of that, that it would point up the necessity for all of the regulations regarding a fair trial, and the right of a jury to be immune from public opinion, and that the relevance, more particularly, in this case, that there were some hard feelings there, which, by allowing the jurors to separate like they did, that some outside influence was given these jurors."

 We think there are at least two reasons why this is not reversible error. First, as the court below stated, this matter is not embraced in the motion for new trial. It appears to us that defendant was attempting at this hearing on motion for new trial (held two and a half months after date of judgment) either to amend the motion (inferentially at least) or offer evidence on some new and different ground from those contained in his original motion. This, we think, he cannot do at this stage of the proceedings. We have long held:

"* * * The allowance of amendments to a motion for new trial, stating new and different grounds from the original, after the expiration of the 30 days from date of judgment, should not be allowed by the court, and they will not be considered by this court. Ferrell v. Ross, 200 Ala. 90, 75 South. 466." Sorsby v. Wilkerson, 206 Ala. 190, at page 191, 89 So. 657, at page 658.

See, also: Ex parte Myers, 246 Ala. 460, 21 So.2d 113; Burton v. State, 40 Ala.App. 146, 109 So.2d 311.

Secondly, the court below gave the defendant an opportunity to examine the jurors on voir dire before striking, and we feel this matter should have more properly been directed to prospective jurors on voir dire.

We have carefully read the entire transcript of the evidence and find no reversible error therein. Therefore, judgment in this cause is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.