233 So.2d 484

**MARING–CRAWFORD MOTOR CO., Inc., a Corp.**

v.

**Julia Emma SMITH.**

**6 Div. 574.**

Supreme Court of Alabama.

Jan. 22, 1970.

Rehearing Denied March 19, 1970.

Donald L. Collins, Charles L. Robinson, Deramus & Johnston, Birmingham, for appellant.

**480**

Jenkins, Cole, Callaway & Vance, Birmingham, for appellee.

HARWOOD, Justice.

The complaint in this action was in two counts.

Count I alleged that the plaintiff contracted with defendant to purchase, and did purchase, an automobile from the defendant for an agreed price of $2,780; that the servants, agents, or employees of the defendant, acting within the line and scope of their authority represented to the plaintiff that the automobile was a new one and had never been sold and delivered to any previous owner; that such representations were false in that the defendant had sold and delivered the automobile to a prior owner, which prior owner had used the automobile and driven it several hundred miles.

The count further alleged that the representations made to the plaintiff were of material facts and were made with knowledge by the defendant that the representations were false and were made to deceive the plaintiff; that the plaintiff relied on the truth of such representations in purchasing the automobile, and as a proximate result of such representations and reliance thereon, she was damaged in that said automobile was substantially less valuable than it would have been if it had been as represented by the defendant.

The plaintiff claimed damages in the amount of $50,000, and also claimed punitive damages.

Count II is essentially in the same language as Count I, except that it alleges as an additional alternative that the representations made by the defendant were made recklessly without knowledge, and with intent to deceive the plaintiff; that the plaintiff was deceived and relied on such representations in purchasing the automobile and as a proximate consequence thereof she was damaged, etc. The plaintiff also claimed punitive damages in this count.

■ In brief counsel for appellant asserts that Count I was based on Section 110, Title 7, Code of Alabama 1940, and that Count II was based on Section 108, Title 7, Code of Alabama 1940. The court so instructed the jury in the proceedings below.

Section 108 provides that:

"Misrepresentations of material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the

opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud."

The alternative appearing in this section "made by mistake and innocently, and acted on by the opposite party" is an effort to enact a principle of constructive fraud. Hornaday v. First National Bank, 259 Ala. 26, 65 So.2d 678.

Under the above alternative in Section 108, an innocent misrepresentation, if the other elements are proven, is as much a legal fraud as an intended misrepresentation. Chemical National Bank of New York v. Jackson, 214 Ala. 458, 108 So. 53. Thus, under Section 108, the good faith of a party in making what proves to be material misrepresentation is immaterial if the other party acted on such misrepresentation to his injury. Standard Oil Co. v. Johnson, 276 Ala. 578, 165 So.2d 361; First National Bank of Auburn v. Dowdell, 275 Ala. 622, 157 So.2d 221.

However, it appears under our decisions that the innocence or willfulness of a party in making a misrepresentation goes to the matter of damages to be awarded, for in an action of deceit punitive damages may not be awarded unless the fraud is gross, oppressive, and committed with an intent to injure. Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909. Whether such representation is gross, oppressive, or committed with an intent to deceive, is dependent upon the facts of a particular case.

The defendant filed a demurrer to the complaint which was overruled. Thereafter the pleading was in short by consent, etc.

The evidence tended to show that on Monday, 14 June 1965, Julia Emma Smith, the appellee herein, a school teacher for some 20 years in the Birmingham school system, went to the Maring-Crawford Motor Company, Inc., a new car showroom. Maring-Crawford is a Ford dealer in Birmingham. Ed Traywick, a salesman for the defendant company, asked her if she were interested in buying a new car and she replied she was. After looking at the automobiles in the showroom, she became particularly interested in a two door hardtop Mustang. The hood was raised and the engine observed, as was the trunk compartment in the rear. No license tag was observed by the appellee on the automobile. Traywick took her for a demonstration ride in the automobile, and the appellee saw that the speedometer showed a mileage of six miles.

No trade was closed at this time as appellee stated she wanted to visit other automobile agencies. However, Traywick made out and gave to her a "Retail Buyers Order" which described the automobile by motor number, model, type, accessories, etc. The purchase price was shown to be $2,700, plus $58.00 tax. The space to indicate "Used vehicle license" was left blank on the "Retail Buyers Order" given the appellee. This document was dated "6–14–65."

The defendant-appellant offered into evidence a second "Retail Buyers Order" dated "6–17–65" which was kept in appellant's files. This retail order is substantially the same as the order given the appellee except that a license tag number, 1 A 92900, is shown in the space to indicate a used vehicle.

On Thursday, 17 June 1965, the appellee decided to buy the Mustang from the appellant. She took the Retail Buyers Order given to her to the office of her teachers credit union. There an application for an automobile loan was filled out in longhand by H. L. Waller, an official of the credit union, and signed by the appellee. Waller testified that the loan was to pay for a new automobile. The application was received in evidence and shows it was for the purpose of buying a new 1965 two door Mustang. Waller testified that in his best judgment he called Maring-Crawford and got information concerning the automobile. In this connection the appellee testified that she saw Waller fill in the data con-

cerning the automobile during a phone call he made to Maring-Crawford. A loan in the amount of $2,300 was made pursuant to the application, the interest being fixed at a rate charged for loans on new automobiles. A check payable to appellee and to Maring-Crawford was issued. The credit union required an insurance policy to be taken out by the appellee covering the Mustang, and the insurance policy described the automobile as being a new one.

The appellee, after securing the check from the teachers union returned to Maring-Crawford and paid the full purchase price of the automobile with the check and apparently with an individual payment by herself of the balance due. She was given a receipt for the payment of $2,758, and the receipt bears the notation "New Car." The automobile was delivered to her that afternoon.

In a few days she received from Maring-Crawford a bill of sale covering the subject automobile. It indicated that the automobile was a used automobile. The appellee called the salesman Traywick about the word "used" on the bill of sale. He told her that he had already bought a tag for the car and for that reason "used" appeared on the bill of sale. Traywick did not tell her that the automobile had ever been sold and delivered previously to another person.

About two weeks after the delivery of the automobile, she was handed a 1965 Registered Owners Manual which she did not examine. On the back of the front binding of the manual under the legend "Ford Registered Owner Plan" Otis E. Garrison is shown as the owner of the automobile. Attached to this space is a slip showing "Ford Subsequent Owner Registration" on which the appellee is shown as the subsequent owner of the automobile.

In November 1965, the appellee went to the courthouse to purchase a new tag for the automobile. It was from information in connection with this transaction that the appellee first became aware that the automobile had been sold and delivered to Mr. Garrison previous to its purchase by her.

Garrison testified that in May 1965, he "closed a deal" for a Ford Mustang from appellant (the same automobile involved in this suit). This was on a Thursday and he took delivery of the automobile on Saturday. He agreed to pay $2,868 with a trade in allowance of $1,000 for his automobile. The following week he received from the appellant a bill of sale dated 24 May 1965, which showed that he had been allowed $600.00 for his former automobile. A controversy developed over this phase of the trade which was settled by Garrison returning the Mustang and appellant returning Garrison's automobile.

Garrison further testified that the speedometer on the Mustang was disconnected at the time it was delivered to him. He connected the speedometer, and afterward when he replenished his gasoline, noted that the speedometer registered 225 miles. He drove the automobile a day or so after this before the dispute concerning the trade in allowance developed between himself and the appellant. He estimated he had driven the automobile some 247 miles when he returned it to the appellant. He had not been in a wreck or injured the Mustang during the time he had driven it.

For the appellant Robert E. Hill, a former sales manager, T. P. Pierce, former Vice President, and Don Maring, former owner and president of the appellant company, all testified to the effect that $2,740 to $2,754 would be a reasonable cash price for the Mustang automobile a week after its former sale.

The jury returned a verdict in favor of the plaintiff-appellee and assessed her damages at $15,000, and judgment was entered pursuant to the verdict. The defendant-appellant timely filed a motion for a new trial which was denied by the court. This appeal is from the judgments ren-

dered on the verdict, and on the motion for a new trial.

■ This being an appeal in a civil case, the extent of our review is of course limited to those assignments of error adequately stated, and adequately specified and argued in brief.

Assignment of error 1 asserts that the court erred in overruling the appellant's motion for a new trial.

This assignment is a vicarious assignment of each properly stated ground of the motion for a new trial brought forth and argued in appellant's brief.

Under assignment of error 1, counsel has argued in brief:

"The trial court erred prejudicially to defendant-appellant in orally instructing the jury on the issue of punitive damages (Tr. p. 160), to which the defendant-appellant duly reserved an exception and argued in its motion for a new trial * * *

* * * * * *

"It cannot be said from a reading of this record that the jury did not award punitive damages. Yet the trial court completely omitted any reference to any intention by the defendant-appellant to injure and defraud the plaintiff-appellee on this issue."

Counsel for appellant has omitted in brief any reference to any ground of the motion for a new trial.

The only exception reserved by counsel to any portion of the court's oral charge was as follows:

"Mr. Collins: The defendant excepts to that portion of the Court's oral charge to the jury which deals with the requisite element of intent to deceive under the applicable statute, and more particularly which state that the Court failed to charge the jury that the plaintiff cannot recover unless she has proved that the defendant intended to deceive the plaintiff, and would cite as an authority for said exception in the case Clayton versus Glasscock cited and reported in 221 Alabama, Page 3, and 127 Southern, Page 538, and while recognizing that it is not necessary to except to the failure to give us certain requested written charges, the defendant would except to the failure of the Court to give defendant written charge number 24."

We interpolate that Clayton v. Glasscock mentioned in the exception in no wise involves any question of punitive damages, but rather intent to deceive.

■ The purpose of reserving an exception to the court's oral charge is to give the court an opportunity to correct any error it may have made. See Scroggins v. Alabama Gas Corp., 275 Ala. 650, 158 So. 2d 90.

■ The court in several instances referred to the burden on the plaintiff to prove to the required degree the fact that the misrepresentations made by the appellant were made with intent to deceive. The exception as reserved is too general to bring to the attention of the court the specific portion of the court's instructions to which the reservation was reserved in regard to intent to deceive, and is therefore deficient even in this aspect. Turner v. Mobile Infirmary Ass'n, 277 Ala. 15, 166 So.2d 851.

■ But above all, the exception in no wise informed the court of any error in its instructions as to the matter of punitive damages. The only matter referred to in the exception was the element of intent to deceive. A party need not state reasons for excepting to portions of the court's oral charge, but where reasons or grounds are stated the exceptor is confined to the grounds stated. Alabama Great Southern R. R. Co. v. Morrison, 281 Ala. 310, 202 So.2d 155; Stein v. Ashby, 30 Ala. 363. The effect of a reservation on specified grounds is to lull the court as to any in-

**484**

firmity in its instructions relative to other grounds.

■ Assignment of error 1 is therefore without merit.

Assignment of error 32 asserts error because of the court's refusal of the following charge requested in writing by the appellant:

"27. The Court charges the jury that if from the evidence *you* are reasonably satisfied that Julia Emma Smith has suffered no actual pecuniary damage from the alleged action of the defendant, *they* cannot find the issues in favor of the plaintiff." (Emphasis ours.)

■ The above charge was refused without error because of the contrapositioning of the word "they" with the word "you." American Surety Co. v. Pryor, 211 Ala. 114, 99 So. 636; Standard Cooperage Co. v. Dearman, 204 Ala. 553, 86 So. 537; Reliance Life Ins. Co. v. Garth, 192 Ala. 91, 68 So. 871; Smith v. E. T. Davenport & Co., 12 Ala.App. 456, 68 So. 545.

Assignment of error 33 pertains to the refusal of appellant's written requested charge No. 28.

■ Charge 28 is a "belief" charge, and instructs the jury that if from the evidence they "believe * * * then they must find for the defendant." Since the complaint contains more than one count, the charge is faulty in the directive that the jury "must find for the defendant." It should have instructed the jury they could not find for the plaintiff. General Finance Co. v. Bradwell, 279 Ala. 437, 186 So.2d 150; Bob White Chevrolet Co., Inc., v. Hayles, 44 Ala.App. 411, 211 So.2d 157. Further, it is not error to reverse to refuse to give a charge which employs the term "believe from the evidence" instead of the correct term "reasonably satisfied from the evidence," Osborne v. May, 270 Ala. 327, 119 So.2d 230, and cases cited therein under paragraphs 5–7. The charge is also faulty in basing the "belief" finding of the jury "from the alleged statement of the defendant." Such phrase is vague and misleading, and the charge ignores the fact that there was substantial evidence additional to the statement of the defendant-appellant tending to show fraud and deceit.

Assignment of error 37 reads:

"The court committed error to the defendant in the following proceedings:" (There is then copied one and two thirds pages from the transcript of the evidence during the examination of the appellee.)

In this material the court's rulings were invoked several times. Actually, because of the conduct of this examination it is difficult to determine if error affected any of the rulings. Certainly some of the rulings were correct.

■ Where an assignment of error fails to specify the precise error relied on and there are several rulings to any one of which the general language of the assignment might apply, such assignment in no way invokes a duty on us to review it. Beasley-Bennett Elec. Co. v. Gulf Coast Chapter, etc., 273 Ala. 32, 134 So.2d 427.

Assignment of error 35 pertains to refusal of appellant's requested charge No. 30, to the effect that punitive damages, "that is, damages which are awarded to punish the defendant" cannot be awarded to the plaintiff where no actual or compensatory damages have been shown by the plaintiff, and assignment of error No. 6 pertains to the refusal of appellant's written Charge No. 1, which was affirmative in nature.

The thrust of appellant's argument under these assignments is that appellee's evidence was inadequate to show any actual or compensatory damages and therefore punitive damages could not be awarded, which must be deemed to have been included in the damages awarded because of their amount.

The appellee was the only witness whose testimony was directed toward establishing the market value of the automobile she purchased in a used state.

The appellee in response to a question seeking her best judgment as to the value of the automobile in the used condition it was at the time she purchased it, replied, "I don't have the slightest idea. You just want me to give you a figure." After one or two more questions by her counsel seeking her judgment as to the value of the automobile at the time of purchase, the court told the witness not to give a guess, idea, or estimate, but if she had a judgment as to the fair market value of the car in the condition it was in at the time she purchased it, she could state such judgment to the jury. The witness then answered, "$1,700."

On cross examination the appellee testified she really did not know the value of the car at the time in question—that she was asked to come up with a figure, and did so.

Cross examined further as to her basis for the $1,700 figure, the witness stated, "Well, I will say this, used cars don't cost as much as new cars."

 Ordinarily, nominal damages are proper where there has been a breach of legal duty, and either no damages are suffered, or there is a failure of proof of actual damages. Conner v. Hamlin, 33 Ala. App. 54, 29 So.2d 570. See also Vol. 7, Ala. Dig., Damages, ⊚ No. 9, for numerous additional authorities, although it appears that in actions of fraud and deceit, damages must be shown since injury is an essential element of such type of action.

The evidence presented by the appellee tends to show a breach of duty by the appellant toward the appellee. She was entitled to nominal damages even though her proof may have been insufficient to support compensatory damages if actual damages be reasonably inferred from the evidence.

It is to be noted that the appellee did testify to the effect that "used cars don't cost as much as new cars."

Considering a question similar to the one now being considered, the Alabama Court of Civil Appeals in the recent case of Mobile Dodge, Inc. v. Ladnier (1 Div. 7), 228 So.2d 478, wrote:

"Furthermore, we think the fact that the market value of a used car is less than that of a new car is of such widespread knowledge in this nation that the Court will take judicial knowledge thereof."

In Mobile Building and Loan Ass'n. v. Odom, 232 Ala. 19, 166 So. 698, the action was in fraud and deceit practiced upon the plaintiff in the sale of membership certificates in the defendant corporation.

There was no evidence in the case tending to show the value of the certificates at the time of the discovery of the alleged fraud or at any time after the plaintiff had purchased them.

Under this situation this court held that the defendant corporation was entitled to the affirmative charge since fraud alone without damage will not give a right of action, injury being an essential element of the cause of action, and where a plaintiff fails to show injury sufficient to sustain an action of fraud, there can be no recovery of even nominal damages.

A court or juror cannot be deemed to know the value of membership certificates in a building and loan association, whereas, it is common knowledge that a used automobile is of less value than a new one. Such common knowledge would therefore support a reasonable inference of actual damage and an award of nominal damages in the present case. This aspect differentiates the present case from the Mobile Building and Loan Ass'n. v. Odom, supra.

In Oates v. Glover, 228 Ala. 656, 154 So. 786, this court pointed out that if a plaintiff suffered no actual damage from a

fraud there would be no cause of action, and the plaintiff could not recover even nominal damages, nevertheless, "as a necessary corollary, it would follow that if the plaintiff did sustain actual damages, as a result of the fraud, though the exact amount of the same in dollars and cents may not be shown, the plaintiff would be entitled to recover nominal damages."

While some jurisdictions have held that compensatory damages are essential to support an award of exemplary or punitive damages, it is the doctrine of our cases, as well as that of a substantial number of other states, that an award of nominal damages authorizes, in the discretion of the trier of fact, the award of punitive damages where legal malice, willfulness, and a reckless disregard accompanies the invasion of the rights of another. It would appear in such situations that "nominal damages" are considered within the context of "actual damages." Louisville and Nashville R. R. Co. v. Smith, 141 Ala. 335, 37 So. 490; Goodson v. Stewart, et al., 154 Ala. 660, 46 So. 239; Alabama Great So. R. R. Co. v. Sellers, 93 Ala. 9, 9 So. 375; Burk v. Knott, 20 Ala.App. 316, 101 So. 811.

We are impressed with the excellence and adequacy of the court's oral instructions to the jury. Among other things the court instructed the jury:

"* * * Punitive damages are recoverable only when the jury is reasonably satisfied that the wrongful acts were willfully malicious, or under circumstances of aggravation. As I have said, punitive damages are not awarded as a matter of right, but rest in the sound legal discretion of the jury to be exercised with a view to the enormity of the wrong as shown by all of the circumstances."

We find no merit in assignments of error 6 and 35.

We have written to all the points raised by the assignments of error and are of the conclusion that no error infected the proceedings below and this judgment is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.

On Rehearing

HARWOOD, Justice.

We extend this opinion on rehearing in deference to the insistence of counsel for appellant.

It appears that several of the grounds of the motion for a new trial attack the verdict as being a quotient verdict.

Attached to the motion as an exhibit is an affidavit by Mr. Donald L. Collins, attorney for appellant. In this affidavit Mr. Collins deposes that immediately after the rendition of the verdict and dismissal of the jury, he met Willard Jay Wilson, foreman of the jury, and questioned him as to the method by which the jury had arrived at the sum of $15,000 awarded in the verdict. Mr. Wilson stated in substance that the jurors had agreed to write a figure on separate pieces of paper which would be totaled and the total divided by twelve, which quotient would be the amount to be awarded the plaintiff. The affiant then proceeded to the jury room and found in a trash can twelve pieces of paper, each bearing a certain figure, and a thirteenth piece of paper upon which appeared the total of the figures, and the division of this sum by twelve. The total of the sums was $193,500, the one-twelfth quotient of said sum being $16,125. The thirteen pieces of paper found in the jury room were attached to the affidavit.

The appellee moved to strike those parts of the affidavit relating to the alleged conversation between Mr. Collins and the juror on the grounds that the same was hearsay, and on the further grounds that

the affidavit sought to impeach the verdict of the jury.

The court reserved his ruling on this motion to strike.

The appellee offered in evidence an affidavit by the juror Wilson, counsel stating he had sent to Mr. Collins a copy of the affidavit on 2 December 1967, some 24 days prior to the hearing.

Juror Wilson's affidavit set forth that all members of the jury agreed that a verdict should be rendered in favor of the plaintiff. Thereafter each juror wrote down a figure he thought would be a fair award, "but at no time during the deliberations did the members of the jury agree in advance of writing the figures to be bound by the figures or an average thereof or a quotient or any resulting amount."

Affiant Wilson further stated that the sum of the figures when divided by twelve amounted to $16,126, as he recalled, and the amount of damages awarded was $15,000, and he had never made a statement to anyone that the jury had agreed to be bound by an average of the figures, but that the amount awarded was arrived at after a full and fair discussion and deliberation with no commitment by any member of the jury.

Objection was interposed to the admission of this affidavit on the grounds that it was "a self-serving illegal affidavit, and not subject to cross examination for either the contents of it or either any prior inconsistent statements made by the affiant to the counsel in this case."

The court reserved a ruling on this objection.

Upon completion of the hearing the court took the matter under consideration and overruled the same on 2 February 1968.

That portion of Mr. Collins' affidavit pertaining to his conversation with the juror Wilson was hearsay, and further, tended to impeach the jury verdict.

Neither testimony nor affidavits of jurors are admissible to impeach their verdicts. Finney v. Newson, 203 Ala. 191, 82 So. 441; Bank of Cottonwood v. Hood, 227 Ala. 237, 149 So. 676; Fortson v. Hester, 252 Ala. 143, 39 So.2d 649; Lackey v. Lackey, 262 Ala. 45, 76 So.2d 761.

The affidavit of Mr. Collins as to the juror Wilson's statement to him tending to impeach the verdict would indirectly permit that to be done which could not be done directly.

In view of the court's denial of the motion for a new trial, we assume that this inadmissible portion of Mr. Collins' affidavit was not considered.

This then leaves that portion of Mr. Collins' affidavit relative to finding the above mentioned papers in the jury room.

As stated in Mobile and O. R. Co. v. Watson, 221 Ala. 585, 130 So. 199:

"The rule has long prevailed in Alabama that, when there are shown figures used by a jury in its deliberations from which a fair inference may be drawn that the verdict was a quotient, the court will so hold, and that it was the result of a previous agreement *unless the contrary is shown.* Southern Ry. Co. v. Williams, 113 Ala. 620, 21 So. 328; Birmingham R. Light & Power Co. v. Clemons, 142 Ala. 160, 37 So. 925; George's Restaurant v. Dukes, 216 Ala. 239, 113 So. 53; Alabama City G. & A. Ry. Co. v. Lee, 200 Ala. 550, 76 So. 908; International Agr. Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, 49 L.R.A.,N.S., 415.

"Also that evidence of jurors is admissible to sustain their verdict, George's Restaurant v. Dukes, supra; New Morgan County Building & Loan Ass'n v. Plemmons, 210 Ala. 286, 98 So. 12; Birmingham, R. L. & P. Co. v. Clemons, supra (and many others), but jurors cannot testify to facts which tend to impeach it. Birmingham, R. Light & Power Co. v. Moore, 148 Ala. 115, 42 So. 1024;

**488**

George's Restaurant v. Dukes, supra; Finney v. Newson, 203 Ala. 191, 82 So. 441; Continental Casualty Co. v. Og-burn, 186 Ala. 398, 64 So. 619 (and many others). (Emphasis ours.)

■■ The affidavit of the juror Wilson submitted by the appellee, negatives the existence of the inference created by the papers found in the jury room of any agreement of the jurors to be bound by an average of the figures noted individually by the jurors. Such agreement to be bound is essential before a verdict may be declared a quotient verdict. Fleming v. Knowles, 272 Ala. 271, 130 So.2d 326; Southern Elec. Generating Co. v. Howard, 275 Ala. 498, 156 So.2d 359.

■ Clearly, the affidavit of the juror Wilson offered by the appellee was properly before the court for consideration. As set forth in the recent case of Jones v. State, 284 Ala. 343, 224 So.2d 890:

"But, Rule 22 of the Rules of Practice in the Circuit and Inferior Courts, Title 7, Code of Alabama 1940, as last amended, specifically provides for affidavits in support of motions for new trial. We have said, 'The general rule is that the affidavit of a juror may be allowed to disclose facts to sustain the verdict.' Harris v. State, 241 Ala. 240, 2 So.2d 431; Leith v. State, 206 Ala. 439, 90 So. 687; Echols v. State, [34 Ala.App. 305, 39 So.2d 44] supra. See, also, 7 Ala. Dig., Criminal Law, ☜957(1), p. 106."

We find no basis for disturbing the lower court's order denying appellant's motion for a new trial on the ground and contention that the verdict was a quotient verdict.

We have considered the other matters argued in the brief of counsel in support of the application for rehearing.

As to these matters, we adhere to our former opinion.

Opinion extended; application overruled.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.